UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:
THOMAS F. BURKEY,                                           Chapter 13
                                                                                     Case No.: 09-12371
                                       Debtor.
---------------------------------------------------------

APPEARANCES:

BARBARA WHIPPLE, ESQ.
*Attorney for Mark E. Lane*
817 Madison Avenue
Albany, NY 12208

RUDOLPH J. MEOLA, ESQ.
Law Offices of Rudolph J. Meola
*Attorney for State Employees Federal Credit Union*
Suite 109
950 New Loudon Road
Latham, NY 12110

Honorable Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Currently before the court is the motion of Mark E. Lane for an order finding the State Employees Federal Credit Union ("SEFCU") in contempt of the order confirming the chapter 13 plan of Thomas F. Burkey (the "Debtor") and in violation of the codebtor stay under 11 U.S.C. § 1301.[1]

The court has jurisdiction over this matter pursuant to 28 U.S.C §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## FACTS

The following facts are taken from the Joint Stipulation of Facts filed by the parties. (Jt. Stip. of Facts, ECF No. 56.) SEFCU is a Federal Credit Union regulated by the National Credit

---

[1] Unless otherwise noted, all statutory references are to Title 11, United States Code, and all rule references are to the Federal Rules of Bankruptcy Procedure.

1

Union Administration.  On December 28, 2005, SEFCU granted a loan to the Debtor to purchase a 2001 Chrysler automobile, which served as collateral for the loan (the "Car Loan").  The note evidencing the Car Loan was also executed by the Debtor's friend, Mark E. Lane.  Under the loan terms, Mr. Lane is a co-obligor on the debt and, thus, jointly liable for payment of the Car Loan.  The terms of the Car Loan provide for monthly payments of $201.35 payable by the 15th day of every month.  The Debtor has been in possession of the vehicle securing the Car Loan at all times.  Mr. Lane has never had possession of the vehicle.

SEFCU maintains its loans through use of a Harland computer system.  Payment activity on SEFCU's loans is monitored by the computer system and not manually by SEFCU employees.  SEFCU obtains credit reports to determine credit worthiness of potential borrowers.  As a condition to obtaining reports, the credit bureaus require SEFCU to provide loan performance data for its loans.  The information must be provided to the credit bureaus using an automated system approved by them.  The Harland computer system is one approved by the credit reporting bureaus.  SEFCU's furnishing of information is an automated process that simply shows whether a contractually due payment for a particular loan has been missed.

The Harland system places payment information on a site that is accessible by a company, which in turn makes the loan performance data available for the credit agencies. The Harland system allows SEFCU to add information only through 13 Specialty Codes,[2] which are accessible via drop-down computer screen entries. There is no Specialty Code indicating a court order granted a debtor or codebtor an extension of time to pay.

The Debtor filed his voluntary petition under chapter 13 of the Bankruptcy Code on June 27, 2009.  Mr. Lane did not file a bankruptcy petition.  The Debtor listed SEFCU on Schedule D

---

[2] The Specialty Codes are: foreclosure was started, foreclosure, government claim, deed in lieu, collection account, voluntary repo, repossession, bankruptcy, paid foreclosure, paid repo, paid voluntary repo, paid collection account and charge-off.

2

as a creditor holding a claim secured by a lien against the Debtor's 2001 Chrysler automobile. SEFCU timely filed a proof of claim indicating the balance owed on the Car Loan was $3,419.17 as of the filing date. (Claim No. 1.) On Schedule H, the Debtor listed Mark Lane as a codebtor on the debt owing to SEFCU. The court confirmed the Debtor's chapter 13 plan by order entered October 19, 2009. The confirmed plan provides for monthly plan payments of $160.78 for a period of 40 months. The confirmed plan also bifurcates SEFCU's secured claim into secured and unsecured portions and provides for the unsecured portion to be separately classified and paid in full. Both the secured and unsecured portions of SEFCU's claim are being paid by the chapter 13 trustee inside the Debtor's plan.

SEFCU's Harland system automatically blocks a late notice from going to a borrower when a bankruptcy filing is noted in the system. On July 3, 2009, SEFCU noted the Debtor's bankruptcy filing in the system. As a result, no late notices were sent to the Debtor or Mr. Lane in connection with the Car Loan post-petition. SEFCU did not utilize any of the Specialty Codes to add information regarding the co-obligor, Mr. Lane, to the Car Loan account.

Pre-petition, the Debtor had been making the monthly Car Loan payments to SEFCU. From June 27, 2009 through October 31, 2009, SEFCU's automated system indicted that the payments on the Car Loan were being made according to the original loan terms. From December 1, 2009 to present, the Debtor did not make the payments of $201.35 as required under the Car Loan, nor did anyone make the required payment amounts on the Debtor's behalf.

At no time after the Debtor filed his petition did SEFCU initiate contact with Mr. Lane or make any affirmative attempt to collect the co-signed debt. Sometime after the Debtor filed his petition, Mr. Lane learned that his credit report showed the Car Loan as "past due." On or about January 25, 2010, Mr. Lane contacted SEFCU and requested that the negative reporting cease.

3

As of that date, neither the Debtor nor Mr. Lane had made the contractual monthly payments of $201.35 that came due November 15, 2009, December 15, 2009, and January 15, 2009. As of January 25, 2010, the Harland system had detected non-payment of the Car Loan for November 2009 through January 2010. This information was automatically transmitted to the credit reporting agencies. SEFCU reviewed Mr. Lane's payment activity and advised Mr. Lane that its records were consistent with what was being reported; the monthly payments of $201.35 which were due under the terms of the Car Loan were not made.

On or about April 21, 2010, Mr. Lane sent a formal written request to SEFCU to correct erroneous and inaccurate information on his credit report, specifically that the Car Loan was 90 days past due in the amount of $555. On or about April 30, 2010, SEFCU responded in writing that the reporting was accurate as the Car Loan was currently due for December 15, 2009. SEFCU indicated that in order for it to report the Car Loan as current, it must actually be current.

There are no additional amounts due to SEFCU in connection with the Car Loan that are not being paid through the Debtor's confirmed plan. SEFCU has not filed a motion for relief from the codebtor stay in the Debtor's case. SEFCU is receiving monthly payments from the chapter 13 trustee in connection with the Car Loan in the amount of $94.01.

SEFCU's Harland system continues to report the Car Loan as delinquent. Mr. Lane's credit score is lower as a result of the Car Loan being reported as delinquent.

On or about February 4, 2010, counsel for the Debtor wrote to the court requesting a conference to discuss the adverse impact the Debtor's bankruptcy case was having on Mr. Lane's credit score. A conference was held on February 11, 2010, and carried until February 24, 2010. A few months later, Mr. Lane requested a conference with the court, which the court held on or about July 8, 2010, and again at an adjourned date on July 23, 2010. On April 8, 2011, Mr. Lane

4

filed a motion requesting that this matter be referred to mediation. On May 26, 2011, the court signed an order sending the issue of SEFCU's alleged violation of the codebtor stay under § 1301 to mediation. The court appointed a mediator by order entered June 3, 2011. On June 29, 2011, the mediator filed a letter indicating that the mediation did not result in a successful resolution of the dispute between the parties. Shortly thereafter, Mr. Lane retained counsel. In late July 2011, Mr. Lane filed this motion. The Debtor is not a party to the motion. SEFCU filed opposition to the motion. At the conclusion of oral argument, the court issued a scheduling order for an evidentiary hearing. After discovery was complete, the parties indicated that they could stipulate to the relevant facts, and there was no need to conduct an evidentiary hearing. The parties submitted the Joint Stipulation of Facts and memoranda of law supporting their positions. This matter was fully briefed and taken under advisement in late January 2012.

## ARGUMENT

Mr. Lane asserts that SEFCU violated § 1301, the codebtor stay provision, by reporting the co-signed loan as past due even though the Car Loan will be paid in full through the Debtor's confirmed chapter 13 plan and by writing to him in response to his formal dispute that:

> Since you are a co-borrower on the loan in question, the loan is reporting accurately. The loan is currently due for 12/15/09. In order for us to report the loan as current, the loan must actually be current.

(Jt. Stip. of Facts 10.) Mr. Lane argues that upon confirmation of the Debtor's chapter 13 plan, the Car Loan should have been reported as being paid in full under a confirmation order and that the Car Loan payments the Debtor is making under his confirmed plan are current. Additionally, Mr. Lane asserts SEFCU's conduct is a basis for finding it in contempt of the confirmation order.

SEFCU asserts several defenses to Mr. Lane's motion. Foremost, it asserts truthful credit reporting is an activity permitted under the Fair Credit Reporting Act. SEFCU contends it only

reported truthful and accurate information, and creditor reporting is protected speech under the First Amendment. SEFCU also argues that Mr. Lane has not alleged that it committed any conduct prohibited by the Code. They also assert Mr. Lane does not have standing to seek damages based upon an alleged violation of the codebtor stay as § 1301 does not authorize recovery of damages by a non-debtor, nor does it permit an award of actual damages or attorney's fees. Additionally, it asserts Mr. Lane failed to mitigate his damages.

## DISCUSSION

The court is asked to resolve two questions. First, whether SEFCU violated § 1301 by reporting to the credit reporting agencies that the Car Loan co-signed by Mr. Lane was "past due" and by responding to Mr. Lane's formal dispute letter that the Car Loan would be reported as current, only if it was actually current. The second issue is whether SEFCU's refusal to remove the negative information from Mr. Lane's credit report violates the terms of the confirmation order and, thus, constitutes contempt of court.

*Claimed § 1301(a) Violation*

Section 1301(a) creates a stay of action against a codebtor. It provides, in part:

> [A] creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor.

11 U.S.C. § 1301(a). Thus, a creditor who attempts to collect a consumer debt from a co-signor will be found in violation of the codebtor stay, subject to certain exceptions not applicable here. The codebtor stay comes into effect automatically when a chapter 13 petition is filed.

The codebtor stay under § 1301 is meant to protect the debtor, not the codebtor. *Brooks v. Gen. Motors Acceptance Corp., (In re Brooks)*, 340 B.R. 648, 655 (Bankr. Me. 2006) (citing *In re Humphrey*, 310 B.R. 735, 737 (Bankr. W.D.Mo. 2004)). The purpose of the codebtor stay

is "to simultaneously preserve the substantive rights of creditors and to preserve the fresh start of the debtors by preventing indirect collection practices." *King v. Wells Fargo Bank (In re King)*, 362 B.R. 226, 230 (Bankr. D.Md. 2007) (citation omitted). The codebtor stay is meant to rid the debtor of indirect pressure or coercion exerted by creditors against co-signors who are typically close friends or relatives of the chapter 13 debtor. *In re Deen*, 260 B.R.577, 580-81 (Bankr. S.D.Ga. 2000) (citations omitted). This position is consistent with the legislative history of § 1301 that provides, "It is not relief for an individual that is not a debtor under the bankruptcy laws. It is designed only to protect the principal debtor, not the codebtor. Any protection of the codebtor is incidental." H.R. Rep. No. 95-595 at 123 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6084. The codebtor stay acts as a procedural delay for the creditor who retains all of its substantive rights against the codebtor, including the right to collect any unpaid balance. *Id.* at 123, 426.

Generally, codebtor stay violations require "the creditor to act in an overt and intentional manner or which has the inescapable and inevitable effect of exerting pressure on the debtor by way of the co-debtor." *In re Juliao*, No. 07-48694-wsd, 2011 WL 6812542, at *5 (Bankr. E.D. Mich. Nov. 29, 2011) (collecting cases). Though there is little case law addressing whether reporting negative information to a credit reporting agency constitutes an act to collect a debt, the court is persuaded by those courts that hold the credit reporting must be part of a broader effort to collect the debt to be a violation of the codebtor stay; merely reporting the debt to credit reporting agencies is not sufficient to constitute a violation of § 1301. *Id.* at *4; *Accord Singley v. Am. Gen. Fin. (In re Singley)*, 233 B.R. 170, 173 (Bankr. S.D.Ga. 1999) (Finding there needs to be a showing that an adverse report to credit bureau was made with the intent to harass or coerce codebtor into paying co-signed debt to find a violation of codebtor stay); *Cf. Irby v.*

7

*Fashion Bug, et. al.* (*In re Irby*), 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005) (Reporting of a debt will not likely run afoul of the discharge injunction unless it is also coupled with other action undertaken by the creditor to collect or recover the debt.)

Beginning in November 2009, SEFCU's loan performance data for the Car Loan reflected that the monthly payments were delinquent. This information was picked up by the credit reporting agencies and, subsequently, reported on Mr. Lane's credit report. While it is uncontested that SEFCU stated in writing to Mr. Lane that it could not report the Car Loan as current unless it was current, there was no demand for payment from Mr. Lane. The record is lacking representations by SEFCU that if Mr. Lane paid the debt, SEFCU would change its credit or that any such quid pro quo was extended to Mr. Lane. SEFCU's letter was sent in response to a request by Mr. Lane, and it merely conveyed information. There was no request in SEFCU's letter that the recipient do anything. Moreover, Mr. Lane stipulated that SEFCU never demanded payment from him or even initiated contact with him. Mr. Lane has not alleged any facts that indicate SEFCU's acts placed any kind of pressure on him to pay the underlying debt. Nor is there anything in the record indicating that the Debtor at any time felt pressured to pay SEFCU's pre-petition debt due to the information reported on Mr. Lane's credit report. There are simply no facts in the record that demonstrate SEFCU's intent in reporting the Car Loan as delinquent was to extract payment of the debt from Mr. Lane or from the Debtor indirectly.

Mr. Lane relies upon *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991), for the proposition that the mere act of providing information that results in adverse information being reported on a codebtor's credit report may be a violation of § 1301. This court respectfully disagrees with *Sommersdorf*, and instead finds the analysis in *Mahoney v Washington Mutual, Inc. (In re Mahoney)*, 368 B.R. 579 (Bankr. W.D.Tex. 2007), persuasive:

> While it may have been true in *Sommersdorf*—as a factual matter—that the creditor intended to spur collection of the debt when affirmatively placing an entry in the co-obligor's credit report, it is too great a leap to say, as a matter of *law*, that the mere reporting of a debt to a credit reporting agency is a *per se* violation of the [codebtor stay].

*Id.* at 586.

*Sommersdorf* is also factually distinguishable in that the creditor was reporting a co-signed loan that was being paid in full under a debtor's confirmed plan as "charged off" and refused to correct the inaccurate information. *Id.* at 592. Additionally, the debtor, not the codebtor, was the movant in *Sommersdorf* and violations of § 362 were also alleged. Here, SEFCU did not report the Loan as "charged off" or "uncollectable," nor was the debtor a party to the motion. Here, payments were reported as past due presumably because the trustee is remitting a monthly amount that is less than the amount contractually due under the Car Loan.[3]

*Contempt of Court*

The Second Circuit has held that a finding of civil contempt is appropriate when (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citation omitted). The movant has the burden of proof to show, by clear and convincing evidence, that the contemnor violated a specific and definite order of the court. *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

Section 1327 provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not such creditor has objected to, has accepted, or has rejected the plan." 11

---

[3] The court need not weigh in on the accuracy of SEFCU's reporting for purposes of this decision. Presumably, Mr. Lane is of the belief that timely payments by the Debtor to the trustee constitute timely payment of the Car Loan. It is unknown whether Mr. Lane reported the allegedly inaccurate information contained on his credit report to the credit reporting agencies pursuant to the Fair Credit Reporting Act. *See* 15 U.S.C. 1681 et seq.

U.S.C. § 1327(a). While a confirmed plan may alter a debtor's loan obligation and modify contractual terms between a creditor and debtor, it does not restructure the obligations of non-debtors. As a result of the codebtor stay, the creditor is required to wait along with all of the other creditors "'for that portion of the debt that the debtor will repay under the plan.'" *In re Lemma*, 394 B.R. 315, 321 (Bankr. E.D.N.Y. 2008) (quoting H.R. Rep. No. 95-595, at 122 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6083). If the plan does not propose to pay the holder of a co-signed obligation in full, the creditor does not have to wait until the case is closed to pursue the remainder from the codebtor, but may seek relief from the codebtor stay pursuant to § 1301(c)(2).

There is no dispute that the Debtor's plan provides for the secured and unsecured portions of SEFCU's claim to be paid in full and, if the Debtor completes his plan, the Car Loan will be fully paid. Although the timing of the Car Loan payments is delayed under the Debtor's plan, SEFCU cannot pursue Mr. Lane to make the payments as originally contemplated under the Car Loan as a result of the codebtor stay. Mr. Lane, however, remains liable on the debt in the event the Debtor does not complete his plan. Neither the confirmed plan nor § 1301 alter Mr. Lane's liability under the Car Loan. Thus, the court cannot find that SEFCU violated the confirmation order.

## CONCLUSION

While the court sympathizes with Mr. Lane's plight and has no reason to doubt that his credit has suffered as a result of his co-obligor's bankruptcy filing, the record is insufficient for the court to conclude that SEFCU partook in any conduct prohibited under § 1301 or in contempt

of court.  Based upon the foregoing, the motion is denied.

It is SO ORDERED.

Dated: November 28, 2012
Albany, New York                                /s/ Robert E. Littlefield, Jr.
                                                Robert E. Littlefield, Jr.
                                                Chief United States Bankruptcy Judge